Merrill.
*vs.*
Sherburne & al.

---

### MARGARET ERICKSON *versus* JOSEPH WILLARD.

E. T. devised all her estate to J. W., and appointed him her executor. In the will was the following clause—" I desire that the said J. W. should, at his " discretion, appropriate a part of the income of my estate aforesaid, not ex- " ceeding 50 dollars a year, to the support of the widow M. E.," &c. It was holden that this clause, coupled with some other expressions, rendered the devise to J. W. a trust to the above amount, which a court of law could enforce.

THIS was an action of assumpsit. The writ contained several counts, in which the substantial allegations were, that on the 1st day of September, A. D., 1806, one *Elizabeth Twyman* died testate; that the defendant was her sole devisee under a condition to pay the plaintiff, from the income of the estate devised, the sum of fifty dollars annually during the plaintiff's life; that the defendant was also executor of said *Elizabeth,* accepted the trust, took possession of her

estate, the income of which was more than sufficient to pay the above annuity ; and that he thereby became liable, and in consideration thereof promised, &c., but had neglected the payment of it. The defendant pleaded *non assumpsit*, and the cause was tried here at the last February term.

The will of *Elizabeth Twyman*, duly executed and proved, was offered in evidence ; and, except the usual introduction and close, was as follows :

" I desire to be decently buried in the church yard of St. " John's Church, at the discretion of my executor herein " after named ; and my worldly estate I give and devise as " follows : First, whereas it having pleased the Almighty in " his wise Providence to take from me all my children, and " placing special confidence in my minister, the reverend " *Joseph Willard*, of *Portsmouth* aforesaid, I give and be- " queath unto him, the said *Joseph Willard* aforesaid, clerk " and rector of St. John's Church, his heirs and assigns for- " ever, all my real and personal estate at the time of my de- " cease, after my just debts and funeral charges are paid, " consisting of the estate where I now live, which is bound- " ed on the street forty-three feet, and is forty feet in depth, " as by my deed of the said premises will appear, be the " same more or less, with the buildings thereon. Also, one " other lot of land, at Frame Point, so called, in *Portsmouth*, " aforesaid, as by the deed of reference being had will ap- " pear ; also the furniture and personal estate where I now " live. And I desire that the said *Joseph Willard* should " at his discretion appropriate a part of the income of my " estate aforesaid, not exceeding fifty dollars a year, to the " support of the widow *Margaret Erickson*, my sister's " daughter, during her natural life ; and it is my express di- " rection that my executor place the aforesaid *Margaret* in " some pious and Christian family in the country, at a dis- " tance from this town, where she may be removed from " temptation. After the decease of the said *Margaret*, should " either of her children be in necessitous circumstances, or

Erickson
*vs.*
Willard.

"should my relation, *Theodore Adams*, ever return home "and be in a destitute situation, I desire that the aforesaid "*Willard* would afford all or either of them such relief as "his discretion and knowledge of my intentions may direct. "And I do hereby constitute and appoint the aforesaid *Joseph Willard* my sole executor."

It was admitted that the defendant had taken upon himself the above executorship, gone into possession of the estate described in the will, and refused to pay the plaintiff fifty dollars yearly, or any sum sufficient for her support, though he had furnished her with occasional assistance when he thought it expedient. The parties then agreed that, if the court, on the above facts, should think the action could be supported, a verdict might be entered for the plaintiff, for a stipulated sum; but should the court think otherwise, the plaintiff was to become nonsuit.

*E. Cutts, jr.*, counsel for the defendant. Words which in common discourse import only request, wish, desire or recommendation, may, when used in wills, create a trust which courts of chancery will compel the trustee to execute. The cases where courts of chancery have undertaken to compel the execution, are those in which it clearly appeared that they were not merely recommendations, where discretion or choice was implied(1). They are those in which the property and objects are certain and definite, and where discretion to the executor is not expressly delegated or clearly implied. As, for instance, a testator requests his executor to give A. B. his gold watch. Here the testator, having a power to make the bequest, the thing given, and the person to whom given being defined, the particular language used shall be considered as mere civility, and as tantamount to an order or direction.

(1) *Maddocks & Price, and Prac. of Chan.* 6.

The fund must be so certain as to enable a court of chancery to impound it. If the whole is given to the first taker, then there is no trust which can be conferred, and the devise over is void.—*Pushman* vs. *Filliter*, 3 *Ves. jr.* 7.—*Sprague*

vs. *Barnard*, 2 *Brown. Ch. R.* 587. The case of *Bland* vs. *Bland*, 2 *Brown. Ch. R.* 43, shews that where the first gift is of the absolute property, such a recommendation following it shall not raise a trust. In that case lady *Bland* gave the estate in question to sir *W. Bland*, and earnestly requested that in case he should die without issue he should dispose of the estate, or so much as he should die seized of, so that the estate might be enjoyed by her daughter. It was held to be no trust, as the words, *so much as he might die seized of*, shew that he might dispose of the whole.

The cases of *LeMaitre* vs. *Bannister*, cited in 2 *Brown. Ch. R.* 40; *Harland* vs. *Trigg*, 2 *Brown.* 142, *and Malim* vs. *Highly*, 2 *Ves.*, *jr.*, 533, clearly shew that where there is a gift of absolute ownership in the first instance, a devise over is void, in whatever terms it may be conceived. In the same case of *Malim* vs. *Highly*, at the rolls(2), lord *Alvanley* says, I will lay down the rule as broad as this—wherever any person gives property, and points out the object, the property, and the way in which it shall go, that does create a trust, unless he does shew that his desire thus expressed is to be controlled by the party, and that he shall have an option to defeat it. The case of *Palmer* vs. *Linbb*, cited in 2 *Swinburne on Wills* 473, is to the same effect.—A. devised all his estate to his wife, saying, I desire and request my wife to give all her estate which she shall have at the time of her death to her and my nearest relations. This was holden a mere recommendation, and not a trust.

(2) *Vesey, jr.*,
335.

In the case at bar the whole property is expressly given to the defendant, before any expression of the testatrix's wish that the plaintiff should be an object of the care and bounty of her executor.

The case of the *Countess of Bridgewater* vs. *Duke of Bolton*, cited in 2 *Swinburne* 475, in note, and many of the other cases referred to in the same note, clearly shew that where it is the intention of the testator to leave the subsequent application of the property at the discretion of the first taker, no trust will arise.

The will shews that the testatrix fully intended to make no absolute bequest to Mrs. *Erickson*, but to recommend her simply to the care and bounty of her executor.

This is apparent from the part of the will which relates to Mrs. *Erickson*, and that part is not qualified or altered by the language used in other parts of the will. The words which relate to Mrs. *Erickson* are : "and I desire the said " *Joseph Willard* should, at his discretion, appropriate a part " of the income of my estate aforesaid, not exceeding fifty " dollars a year, to the support of the widow *Margaret* " *Erickson*, my sister's daughter, during her natural life. " And it is my express direction that my executor place the " aforesaid *Margaret* in some pious and christian family in " the country, at a distance from this town, where she may " be removed from temptation." It was beyond the power of the testatrix to confer on her executor authority to remove her frail niece into the country, and place her in a pious and christian family, where she might be less exposed to temptation. The reason for limiting the extent of the sum which the executor might appropriate for the support of Mrs. *Erickson*, was from an apprehension that a greater provision might induce her niece to lead a life of indolence and sin, and lest it might conflict with her other views in the disposition of her property. If she had designed to make a bequest to her niece of an annuity of fifty dollars, she would have so expressed herself in clear and unambiguous language. The words, " not exceeding," and, " at his discretion," clearly shew that it was the testatrix's intention to leave the smallness of the sum entirely at the choice and option of her executor, who was her spiritual guide and friend, and one in whom she doubtless supposed that she might safely confide. The words, " at his discretion," used in the first part of the will, respecting her interment, must, as it has been observed on the other side, be construed as applicable to its manner. There is not, however, any rule of construction, which requires the same words to be used

in the same sense in every part of the same instrument. It is not unusual for the same words to be used in different senses in instruments drawn with more care and consideration than wills generally are. Words are to be construed according to their collocation, and according to the subject matter.

*I. Bartlett,* counsel for the plaintiff.—In last wills and testaments, which are frequently made when, in the language of the law, the testator is *inops concilii,* the law regards chiefly the *intention;* and any words which manifest the intention to create a legacy, will be holden sufficient for that purpose.

In support of this general position are *Bac. Abr., Will,* F, 5—6.—6 *Mass. Rep.* 174.—2 *Black. Com.* 379.—*Co. Litt.* 112, *b.*—1 *Vezey* 25.—6 *D. & E.* 314.—11 *Mass. R.* 531.—3 *Lev.* 125.—*Lovelass* vs. *Wills,* 149, *Bac. Abr., Legacy,* B, 1.—*Com. Dig., Chan.* 3, *y,* 4.

Words of *recommendation* or *desire* come within this general position, and are a sufficient expression of the intentions of the testator to be imperative upon the executor, if the subjects of property and the object to whom to be given are sufficiently certain. Among cases in point is that of *Harding* vs. *Glyn,* in 1 *Atk. Rep.* 469. The testator gave all his property to his wife—but did *desire* her at her decease to give certain parts of it to such of his own relations as *she should approve of.* The wife chose not to *approve* of his relations, or comply with his *desire,* and devised the property to other persons. The court ordered distribution to his relations. And the language of the reporter is, "that any words of a testator intimating a *request, wish, desire, recommendation,* &c., are sufficient to create a trust, provided there be certainty of the gift and the object to be benefitted thereby."

In *Blount* vs. *Doughty,* 3 *Atk. Rep.* 481, *Hardwicke* observes that "where a father gives a legacy to his son, and *desires* he will do an act for the benefit of his sisters, this

Erickson
*vs.*
Willard.

to be sure does amount to an obligation upon the son, &c. And in *Malim* vs. *Keigly*, 2 *Vezey, jr.*, 532, the language of the lord chancellor is, "if a testator *recommend* that to be done by a person whom he has a right to order, the mode is only civility."

In the *Duchess of Buckingham's case*, mentioned by lord *Thurlow*, in *Harland* vs. *Triggs*, 1 *Bro. C. C.* 491, the direction was to pay 100*l.*, "*if it shall be her grace's pleasure so to do*"—and this was holden to create a trust.

In *Eales* vs. *England*, *Pro. Chan. C.* 201, the master of the rolls says, "words of recommendation and desire in a will are always expounded a devise."—Cited in 2 *Ves. jr.* 531.

In *Pushman* vs. *Filiter*, 3 *Ves., jr.*, 7, the testator devised his property to his wife, "*desiring* her to dispose of what should be left at her decease among his children, in such manner as she should judge most proper." The master of rolls observed, "the words are clearly sufficient to raise a trust, for we are now got beyond any possibility of doubt as to the rule of the court that all words of *recommendation* or *desire*," &c.—Also, 4 *Ves., jr.*, 708.

*Wareham & al.* vs. *Brown & al.* 2 *Vernon* 153. One devises to two of his sisters 400*l.* each, and to his third sister what his executors *should think fit.* The court decreed that the third sister should have 400*l.*

Lord Chancellor *Eldon*, in 8 *Ves., jr.*, 380, states the law upon this point in these very strong and comprehensive terms. "The cases upon words of recommendation have, I take it, now settled this rule ; whether the terms are those of *recommendation*, or *precatory* or *expressing hope*, or that the testator *has no doubt*, if the objects with regard to whom such terms are used are certain, and the subjects of property to be given are also certain, the words are considered imperative, and create a trust."

See, also, 2 *Bro. C. Rep.* 226, *Pierson* vs. *Gamet.*—*Nab* vs. *Nab*, 10 *Mod. Rep.* 404.—*Kingsman* vs. *Kingsman*,

2 *Vernon* 559.—2 *Fonb.* 37.—2 *Sand. on Uses* 210.—
*Farewell* vs. *Jacobs,* 4 *Mass. Rep.* 635.—2 *Vernon* 513,
421.—*Godolp.* 132.

Upon the principle supported by the cases cited, it is con-
tended that the intention of the testator is sufficiently mani-
fested in this will to create the legacy claimed by the plain-
tiff. And this intention is apparent, not only from the par-
ticular words used, but from the general tenor of the instru-
ment.

If the language of this will was of a character so doubtful
as to require a consideration of the circumstances under which
it was made, it is believed that the general rule of a favora-
ble construction for the devisee would be found to apply
with unusual force to the present plaintiff, from some facts
peculiar to this case.

Had the testator been skilled in all the technical learning
of the law ;—had the will been written by a person whom
the testator had thought it necessary to overlook with cau-
tion ;—had it been written by a person whose interest would
have been promoted by the creation of a legacy to the plain-
tiff—such circumstances certainly would not be urged in
support of a construction favorable to the plaintiff's claim.

But the facts, as they appear in the statement agreed to
by the parties in this action, shew us that the testator was a
feeble and solitary female, in the eve of life. The defend-
ant was her religious teacher, the pastor of her church, writ-
ing an instrument making himself residuary legatee and ex-
ecutor of her estate—and with every possible inducement of
interest not to create a legacy out of himself contrary to her
intention. Notwithstanding the clerical character of this
executor, and the singleness of view with which he may
have been supposed to have devoted himself to the spiritual
concerns of his flock, the history of the ingenious stratagems
with which the gentlemen of his cloth evaded all the skill
and care of parliament from the 7th of Edw. I. to the 9th
of Geo. II. shew that they are not always indifferent to their
temporal interests.

By the instrument itself it appears that this same drafts-man, executor and legatee, possessed not only the influence which, as her spiritual guide, he might be supposed to have exercised, but that, in the words of the will, "having great esteem for," she placed "special confidence in her minis-ter, the Rev. *Joseph Willard*," as he was pleased to style himself, and with such *esteem* and *confidence* she no doubt did believe her *desire* or *request* upon the executor he would consider as obligatory as his bond.

The words, "I desire," &c., used in the will, are distinct-ly within the rule of law established by the authorities refer-red to. The object of the bounty it is impossible should with more *certainty* be designated, than is the plaintiff by the same clause ; and the property is expressly stated to be "the income of the estate aforesaid," described in the will.

Were the words, "I desire," &c., at all of doubtful mean-ing as to the intention of the testator, we would ask if the language of the next clause, ordering a provision for this plaintiff, is not sufficiently explicit, which begins, "and it is my express direction," &c.

But all this is said to be "*at the discretion*" of this same defendant. The idea of making a bequest, and leaving it to be paid or not, at the election of the residuary legatee, is so absurd in itself, that the language must be such as to justify that and no other construction, before it would be as-sented to by the court. By the plaintiff it is contended that the word *discretion* applies only to the manner—and the law has so limited its meaning, when used in such instruments as in the cases that have been read. And even where it could not be applied to the manner, the courts have in many instances given the term a very definite signification, as in *Cragrave* vs. *Perrost*, 2 *Vernon*, 355. What the executrix "*should think fit*," was decreed to mean 1000*l*. And so in others.

That the word *discretion* applies to the manner only in which the legacy shall be paid, is certainly very apparent from the connexion and tenor of the whole will.

Erickson
*vs.*
Willard.

In the first place, from the use of the same term, with that meaning previously in the same instrument, by which the testator " desires to be decently buried in the church yard of St. John's church, *at the discretion* of the executor." Now apply to this period the construction contended for by the defendant, and let him have been as averse from expending, as paying over the property to legal claimants, and the testator's chance for burial would have been much more problematical than the good woman herself would ever have suspected.

Another circumstance in support of the plaintiff's construction, is the limitation of the same to fifty dollars per annum. If the defendant was to pay or not, at his own pleasure, could this precaution have been necessary to guard against his being too liberal to the plaintiff?

This very limitation *to* that sum is a bequest *of* that sum. As in the case cited from *Godolphin*, 283, where the testator says : " If my son A marries B, let not my executor give him 100*l*. These, on A's not marrying B, are holden to be sufficient to give him 100*l*."

Again, the same clause of the will provides this sum for the plaintiff's " support" " during her natural life." This must have been intended to secure some privilege to the plaintiff, or to guard against some evil that might result to the defendant. It was, then, either intended to secure the annual payment of the sum before mentioned, to the plaintiff for that period, or to protect the defendant, in the overflowing of his benevolence, from the danger of appropriating that sum " for her support" *after her decease !*

And again—it is provided in the next succeeding clause of the will, that " after the decease of the said *Margaret*," &c., he should in a certain case furnish relief to some other of the testator's relations. But if he was not compelled to furnish the plaintiff any thing *during life*, no reason could exist why he should wait for her *death* to aid the other poor relations.

If the intention of the testator had been to convey all her estate to the defendant, as is contended by his counsel, then the first clause of the will only was necessary for that purpose, and all the remainder of it might as well have been omitted. The latter clauses must be considered perfectly nugatory, or admit of the construction insisted upon by the plaintiff. It is not even pretended they can answer any other purpose.

Do not the words and general tenor of the will express with sufficient certainty the intention of the testator as to the legacy claimed, the person to whom given, and the property to be appropriated, to become imperative upon the executor?

In coming to a decision in the affirmative of that question, it cannot but be gratifying to the court, as to every friend of humanity, that the principles and precedents of the law in this case confirm the decree of mercy—as the sum which the plaintiff may recover in this action is a portion only of the estate to which she was, without the will, entitled as heir, and it now will be appropriated for the support of her who for a long time has depended for bread upon publick charity.

\* WOODBURY, J. delivered the opinion of the court.

It is an established principle in the construction of all instruments, that *verba debent intelligi cum effectu, ut res magis valeat quam pereat*(1.) This rule applies with peculiar force to wills, because they are often written by unlearned testators, and without the advice of professional men. But being in a literal as well as technical sense the wills of people who possess the right to dispose of their own estates, such instruments are not only to be made operative, but operative in the *manner* contemplated by the makers of them, provided their intention be clothed in language which courts of justice can understand and enforce(2.) In most cases the testator attempts to pass directly to the objects of his bounty the property intended for their benefit. But when

(1) *Plowd.* 156.

(2) *Bac Leg. B.*
—6 Co. 65,
*Finch's case.*

\* RICHARDSON, C. J., having been counsel, did not sit.

these objects happen, from youth, extravagance, or lunacy, to want the capacity to manage in a judicious manner pecuniary concerns, it is justly considered unsafe to place property under their absolute controul ; and in such circumstances it is not uncommon to bequeath it to others, in whom the testator reposes special confidence, and to accompany the bequest with a desire that the whole or a portion of the income should be paid to those whose welfare he is consulting. Consequently, wherever from the whole testament the intention is apparent that the immediate devisee should, in the mode before mentioned, appropriate a particular sum to the use of another, the law is well settled that such devisee becomes a mere trustee to the amount of that sum(3.) Whether such an intention be apparent in the will under consideration, remains to be ascertained. The testatrix was a widow, the defendant was her spiritual teacher, and the plaintiff her heir at law. Thus situated she appointed the defendant her executor, and bequeathed to him her whole estate ; but at the same time declared that, " placing special confidence" in him, she desired " that he should at his discretion appro- " priate a part of the income of her estate aforesaid, not ex- " ceeding fifty dollars a year, to the support of M. E.," the plaintiff. She then adds : " It is my express direction that " my executor place the aforesaid M. E. in some pious and " christian family in the country, at a distance from the town, " where she may be removed from temptation."

(3) *Bac. Leg. B.* —1 *Saund. Us.,* 210.—2*Fonb.*37.

Had the testatrix not intended to raise a trust for some person, it is probable the will would have closed after the devise to the defendant. But her relations, as well as the defendant, appear to have been objects of her bounty ; for beside the plaintiff, she afterwards, under certain conditions, made provision for other remote connexions. The plaintiff, however, was her nearest relation, and not only so, but from the allusion to her habits, was doubtless destitute of property. To such a person it would be very natural for the testatrix to give a legacy ; yet not very wise to give it

directly ; and when she had concluded to give it indirectly, by means of a trust, no person would be selected with more readiness for a trustee than her religious pastor and executor, for whom she entertained " great esteem." A peculiar confidence, also, is always presumed to exist between an executor and testator. The slightest wishes of the latter ought, in a case like the present, to be binding on the conscience of the former. The words " desire," " request," " recommend," " hope," " not doubting," that the executor will conduct in a specified manner, when they come from a testator who has the power to command, are to be construed as commands, clothed merely in the language of civility ; and they impose on the executor a duty which courts have in repeated instances enforced(4). It is probable, then, not only from the circumstances we have enumerated, but also from the two clauses before recited from the will, that E. S. did wish the defendant to appropriate " a part of the income of her estate" to the support of the plaintiff. Yet it is contended that this wish is not absolute, but so qualified by the phrase, " at his discretion," as to leave the intention of the testatrix doubtful, and therefore the payment of the money optional with the executor. In this case, however, the word " discretion" does not so naturally relate to the desire that the defendant should or should not appropriate something to the support of the plaintiff, as it does to either the manner or the amount of the appropriation. For the phrase, " I desire that the said J. W. should," &c. seems, from the arrangement of the words, to be an absolute expression of her wish. Nor could the next clause in the will, that it is her " express direction that her executor place the aforesaid M. in some pious and christian family in the country," &c., be ever obeyed, without supposing and enforcing an absolute wish that some part of the income of her estate should in some way be devoted to the plaintiff's benefit. If this were not the correct construction, it would be difficult to account for the specifick direction that the annuity should continue during the " natural life" of the plaintiff, and

(4) *Atk.* 463, *Harding* vs. *Glynn.*

after her death be, under certain limitations, extended to other relations. Nor can we discover any reason why the testatrix confined its amount to fifty dollars, if it were intended that an appropriation might or might not be made, at the defendant's election. The phrase, "at his discretion," is also used in another part of the will. I " desire to be de-" cently buried in the church yard of St. John's church, at " the *discretion* of my executor." Here it must mean a " discretion" as to the manner, and not a " discretion" as to the fact of her burial. Her "desire" to be buried in some mode, cannot be doubtful ; and though the same words even in the same instrument be not always employed in the same sense,(5) yet the *substrata materia* in both these places render it probable that the term " discretion" was not used in either with a view to enable the executor to defeat the desire of his testatrix. This case can be distinguished from *Malvin* vs. *Heighley*,(6) and *Pushman* vs. *Felton* (7) ; and as the wishes of the testatrix to have something appropriated to the benefit of some one, seem to be sufficiently express,(8) and as the plaintiff is in a particular manner described as the object of that appropriation, the only remaining requisite to complete the trust is a certainty in the subject matter of the appropriation.

The fund, however, from which the appropriation was to be made, is designated with clearness ; because it was the income of her " estate," which had before been described. It is true, that the amount of the appropriation is less distinct, being called " a *part* of the income of my estate aforesaid, not exceeding 50 dollars a year." But it is still said to be for " the support of" the plaintiff—placed " in some pious and christian family in the country," and consequently could not mean less than 50 dollars, unless the " income" of the " estate" devised, or the expenses of her comfortable " support," situated " in the country," would amount to less. Whether they would or would not, can without difficulty be determined ; and *quod potest reddi certum, est certum*(9).

(5) *Vattelle, sec.* 281.

(6) 2 *Vez. jr.* 333.

(7) 3 *Vez. jr.* 7.

(8) 10 *Mod.* 404, *Nab* vs. *Nab.*

(9) 1 *Com. C.* 4.

" What his executors should think fit ;"(10) or that his
executor should " support" another ;(11) or that he should
" provide for my daughter *Anne,*"(12) are all expressions
less definite, because no specifick sum is named as a limita-
tion ; yet they were each holden to raise a trust.  In a case
like the present, if an actual " discretion" as to the amount
of the legacy, however great may happen to be the necessi-
ties of the *cestui que trust,* is still conferred on the executor,
it is well settled that a court of chancery would interfere
and regulate the discretion, when attempts are made to abuse
it (13.)

But if such a court existed here, no necessity appears
in this case for its interference ; because the word, " discre-
tion," as used in the will, applies to the manner only of the
appropriation—or if to the amount likewise, so many col-
lateral circumstances limit its extent, that the amount can
be ascertained and the discretion regulated in a court of
law.

A person in this way invested with a discretion can never
act " according to his arbitrary will"(14.)  His " discre-
tion" is in law a sound discretion.  It is, says lord *Coke,* a
" straight line," and means " *discernere per legem quod sit
justum*"(15.)

On a consideration of these principles and authorities, we
incline to the opinion that, by the whole will construed to-
gether, a trust must have been intended for the plaintiff, and
that this opinion is in conformity with the general rule laid
down by lord *Eldon,*(16) that " whether the terms are those
" of recommendation, or precatory, or expressing hope, or
" that the testator has no doubt ; if the objects with regard
" to whom such terms are used, are certain, and the subjects
" of property to be given are also certain, the words are
" considered imperative, and create a trust."  But though a
trust was here created, it has been questioned whether courts
of law can enforce the execution of trusts.  In this class of
cases in *England* we are aware of the uniform practice to
resort to chancery.  Yet it is observed by *Buller,* J. (17)

Erickson
*vs.*
Willard.

(10) 2 *Vern.* 153,
*Wareham & al.*
vs. *Brown.*

(11) 4 *Ma. R.,*
636, *Farewell* vs.
*Jacobs.*

(12) 3 *Ves., jr.*
7.—*Vide* 2 *Roll.*
*R.* 194.—*Poph.*
148.

(13)  *Bac. Leg.*
*C.*—2 *Vern.*513.

(14) *Burr.* 570,
560, 2539.—4 *D.*
*& E.* 757. — 8
*John.* 426, *Rose*
vs. *Stuyvesant.*

(15) 2 *Inst.* 289.
—8 *Mass. R.* 40.

(16) 8 *Vez. jr.,*
380, *Paul* vs.
*Compton.*

(17) 5 *D. & E.*
608, *Smith* vs.
*Jameson.*

Erickson
*vs.*
Willard.

"With regard to the other point made, that a breach of trust "may not be the ground of an *assumpsit*, there is not an "abridgement in the law which does not contradict such a "proposition."

In the common case, where money is, without an express contract, received to the use of another, the practice to sustain an action and allow damages for the non-performance of the trust to pay it over, is well settled. Indeed, it has often been said that this is a liberal action in the nature of a bill in equity,(18) and unless this trust be now enforced by us, the will of the testatrix becomes defeated. Finally, no insuperable objection is perceived to a recovery in the present suit of all the damages which the plaintiff may have suffer ed from the defendant's neglect to fulfil the intention of the testatrix(19.)

(18) *Cowen* 199,
*Clarke* vs. *Shee.*
—2 *Burr. 1010.*

(19) 4 *M.R.* 636,
*Farewell* vs.*Ja-
cobs.*

*Let a verdict be entered for the plaintiff for the sum agreed.*