SARAH A. LINES, APPELLANT, *vs.* HENRY D. DARDEN, AND ELOIZA DARDEN, HIS WIFE, APPELLEES.

1. In the construction of a will, the intention of the testator, as therein expressed, shall prevail over all other considerations, if consistent with the principles of law. To this first and great rule in the exposition of wills, all others must bend.

2. Courts allow of no rule of construction of mere words to control the intention, but the whole instrument is to be considered, and if possible, effect given to every part of it.

3. The relative situation of the parties, the ties and affection subsisting between them, besides the motives which would naturally influence the mind of the testator, are proper to be considered in expounding the import of doubtful words.

4. The words " will and desire," when addressed to an Executor, are imperative, and it is his duty to carry out the wishes of his testator, if possible, and when consistent with the will; but these words are not, in all cases, necessarily addressed to the Executor.

5. Where a testator, by one clause of his will, gives and bequeathes to his " beloved and only daughter," all of his estate, both real and personal, during her natural life, and at her death directs the property to be equally divided between the children of the tenant for life ; and by another clause expresses his " will and desire" to be, that should either of his grand-sons arrive at the age of twenty-one, or any of his grand-daughters marry, previous to the time of final distribution, then that such grand-son, or such grand daughter, shall receive *a portion* of the estate as a loan, to have the management and receive the benefit of the same until the final distribution shall take place, when the property thus loaned shall return to the estate to be equally divided : HELD, that the will did not create a trust for the benefit of the grand children, but merely vested a power in the daughter (the tenant for life) to be exercised at her discretion.

6. To constitute a trust, three circumstances must concur : sufficient words to raise it—a definite subject—and a certain and ascertained object. No commendatory terms of a will expressing a " wish," " will," or " desire," &c., are sufficient, unless there be certainty as to the parties *who* are to take, and *what* they are to take.

7. Whenever the subject to be administered as trust property, and the objects for whose benefit it is to be administered, are to be found in a will, not expressly creating a trust, the indefinite nature and *quantum* of the subject, as well as the indefinite character of the objects, are always used by Courts as evidence that the mind of the testator was not to create a trust.

8. The words "will and desire," are not necessarily mandatory. They would be sufficient to raise a trust, if not coupled with words inconsistent with such construction.

9. The statute of distributions affords no rule to determine the extent of a legatee's interest.

10. A Court of Equity will aid a defective execution of a mere power, unless it is inequitable to others; but in its non-execution, it assumes no jurisdiction.

11. A party who seeks the aid of a Court of Equity in executing a power, must show in himself some superior equity to him against whom it is asked. Where the equities are equal, the Court will not compel the donee to do that which he will not do for himself, but will remain passive.

12. Equity will not even aid a defective execution of a power, to the disinheritance of the heir at law.

13. The soundness of the doctrine of illusory appointments, as connected with discretionary powers, questioned.

This cause was brought up by appeal from a decree of the Circuit Court for Gadsden County, sitting in Chancery.

Henry D. Darden and Eloiza Darden, his wife, appellees in this Court, and complainants in the Court below, filed their bill against Sarah A. Lines, Benjamin S. Hawley, and Elizabeth, his wife, John W. Goldwire, and Sarah Jane, his wife, John W. Poindexter, and Harriet, his wife, J. Lawrence Lines, and Joseph R. Lines, claiming that by the last will and testament of Jonathan Robinson, deceased, a trust was created for their benefit, which the appellant, Sarah A. Lines, failed to execute, and asking the Court to compel the execution of the trust thus created. The will, upon the provisions of which this claim is based, is in the following words, viz:

In the name of God, amen. I, Jonathan Robinson, of the County of Gadsden, and Territory of Florida, being of sound mind, but weak and feeble in body, knowing the

uncertainty of life, and impressed with the solemn. duty which is incumbent upon us, of settling our earthly affairs previous to the great change from time to eternity, do make and ordain this my last will and testament, hereby revoking and annulling all others.

Imprimis.—I desire the whole of my estate, with the exceptions, if any, hereinafter mentioned, to be kept together until all my just debts be paid, out of the proceeds and profits thereof.

Item.—I give and bequeath to my beloved and only daughter, Sarah Ann Lines, all of my estate, both real and personal, during her natural life, with the exceptions and restrictions hereinafter mentioned, and at her death, I hereby direct the same to be equally divided among her children, share and share alike. Provided, however, nevertheless, that if my said daughter, Sarah Ann Lines, shall intermarry, subsequent to my death, then, in that case, I devise all my estate, both real and personal, originally devised to her, with the exceptions and restrictions hereinafter mentioned as aforesaid, unto Joseph Austin, his heirs, &c., in trust and for the use and behoof of my daughter, Sarah Ann Lines, and her heirs, to her own, sole, separate, and exclusive use, free from the power and control of her husband, and not liable to his debts, in any manner or form whatsoever.

Item.—Should either of my grand-sons arrive at the age of twenty-one years, or any of my grand-daughters marry previous to the time of final distribution, viz: before the death of my daughter, Sarah Ann Lines, then, in that case, my will and desire is, that such grand-son so arriving at the age of twenty-one years, or such grand-daughter so marrying, as aforesaid, shall receive a portion of the estate as a loan, to have the management, and receive the benefit of the same, until the final distribution shall take place,

and then to return the same to be equally divided with the rest of my estate.

Item.—I do give and bequeath unto Miss Sarah Lowther the sum of ten thousand dollars, and do hereby authorize my executors to pay over the same to her, or her authorized agent.

Item.—My desire is, that at my death, my executors will collect or cause to be collected all my stock of cattle and dispose of the same to the best advantage.

Item.—My will and desire is, that my boy George, the carpenter, shall be allowed to choose his own employer, annually, during his lifetime, such employer paying the sum of one dollar to my executors.

Item.—I give and bequeath to my grand-daughter, Elizabeth Hills, my negro boy Liberty, about five years old, over and above her share of my estate.

Item.—I do hereby appoint my daughter, Sarah Ann Lines, and Joseph Austin, my executrix and executor, of this my last will and testament.

In testimony of all which, I have hereunto set my hand and seal, this 19th day of September, Anno Domini 1838.

JONA. ROBINSON, [Seal.]

Signed, sealed and published by testator, as his last will and testament, before us, who have signed it in his presence, and in the presence of each other.

> JOHN W. MALONE,
> ARTHUR J. FORMAN,
> HEZEKIAH HAWLEY,
> S. B. STEPHENS.

Eloiza Darden is a daughter of Mrs. Sarah A. Lines, as are also Elizabeth Hawley, Sarah Jane Goldwire, and Harriet Poindexter. J. Lawrence Lines, and Joseph R. Lines, are her sons. Goldwire and wife, and Poindexter

and wife, in their answers to the bill, insisted upon the construction of the will claimed by Darden and wife. Sarah A. Lines, and the rest of the defendants, denied this construction, and insisted that the testator vested a mere power in Mrs. Lines, to be exercised at her discretion.

The Court below, rendered a decree in favor of complainants, from which the appellant appealed.

*J. T. Archer*, (with whom was *John E. Ward*, *Esq.*, of Savannah, and *P. Woodson White*,) for appellant.

The devise in question, created, either :

1. *A power* in Mrs. Lines to loan a portion of the estate of the testator to each of her children during the term of her life, commencing at the time of the happening of the events specified—or,

2. A trust estate in Mrs. Lines, to apportion the estate, or some indefinite portion of it during the term of her life, to those appointed to take the same property in remainder.

I. If it is a mere power in Mrs. Lines, uncoupled with any trust, the non-execution of the power cannot be remedied in this Court. Lewin on Trusts, 574. 1 Story Eq. Juris., § 169. Tollet v. Tollet, 2 P. Wms., 489. Brown v. Higgs, 8 Vesey, Jr., 561.

It is contended, however, that equity will relieve against *the defective execution of a power ;* and as Mrs. Lines has given, or rather loaned to each of those in remainder who have arrived at the age of twenty-one, or married, some portion of the personalty, which they contend is not enough, it may be considered as a defective execution of the power, which may be supplied in this Court.

But the principle does not apply to such a case as this. The defective execution of a power which the books treat of, is—1. When the defect arises from an informal instrument, not within the scope of the power; and, 2. When

the defect arises from the improper execution of the appropriate instrument. See 1 Story Eq. Juris., Sec. 172, 173, 174, and authorities cited. Cockerill vs. Cholmely, 1 Russ. & M., 418.

Where there is a *defect of substance*, in the execution of a power, as the want of co-operation of all the proper parties in the act, equity will not aid the defect. 1 Story Eq. Juris., Sec. 175.

So, equity will not supply a surrender, or aid the defective execution of a power to the disinheritance of the heir at law. 1 Story Eq. Juris., Sec. 177.

It will be recollected that Mrs. Lines occupied the position of heir at law, and but for the will would be entitled to the estate in fee.

Nor, if this is a power, does the doctrine of *illusory appointments*, apply to the case.

All the cases referred to by Story, Hovenden, and other writers, are cases of such gross *inequality* in the division of an estate, under a power of appointment, as almost amounts to a fraud. See 1 Story Eq. Juris., Sec. 255, and the instances and authorities cited.

There is no pretence here, that the inequality of the different portions loaned to her children by Mrs. Lines, is so grossly unequal in amount as to amount to a fraud, but the complaint is, that under an authority to lend " *a portion*," she has not lent enough ; she has not surrendered enough to all.

In Butcher vs. Butcher, an appointment of £200 out of a fund of £18,000, to one of five children, was held *not illusory*. 9 Vesey, Jr., 381.

In Fronty vs. Fronty, the Court in South Carolina objects to the doctrine, and says, that undertaking to say an appointment is illusory, is substituting the discretion of

the Court, for that of the person in whom it is confided. Bailey Eq. R., 530.

Upon a full view of all the circumstances, and the relative position of the parties, it is evident that the intention of the testator was, that a *discretion* should be vested in and exercised by, Mrs. Lines, in this particular. And for obvious reasons, is it thus referred. Mrs. Lines, the daughter of the testator, and the primary object of the bounty intended, is to be supported; she is, therefore, and as a matter of course, to retain so much of the estate given her as will yield an income adequate to that end. Again, in the distribution of the portions, she is to be regulated by the condition of her children, at the time the contingencies happen, upon which she is to lend them "a portion" of the estate. One may marry a wealthy man, and not require any, or so much aid and assistance as another, who may marry a man of inferior property or wealth. One may be unfortunate, and may, from time to time, require more aid —another may be improvident, &c. Of all these contingencies, she is constituted the judge, and her discretion, the rule.

If the clause under consideration does constitute a power, then it is a general one, and in its exercise, there can be no rule but the discretion of the party to whom it is confided. The discretion of the Court is not to be substituted for the discretion of the party. Fronty vs. Fronty, Bailey Eq. R., 529, *et seq.* Bax. vs. Whitbread, 16 Vesey, Jr., 24. Wollen vs. Tanner, 5 Vesey, Jr., 218. Long vs. Long, 5 Vesey, Jr., 445.

II. Does the third clause of the will create a trust which the Courts will compel the execution of?

It is not claimed to be a direct trust, but an indirect and constructive one, and that by force of the terms "will and desire."

8

While we concede, that at one time the Courts of England had gone great lengths in construing precatory and recommendatory words into creations of trusts, yet it will be perceived from the later cases, that it is a subject of much regret that the doctrine was ever established; and the tendency of the Court at the present day, is not only to restrict the application of the doctrine, but to retrace as far as possible, the course of decision. 2 Story Eq. Juris., Sec. 1069–1070.

In Sale vs. Moore, the vice chancellor said, that the first case that construed words of recommendation into a command, made a will for the testator, &c. The current of decision, he adds, has of late years been against converting the legatee into a trustee. 2 Cond. Eng. R., 270.

Precatory words, such as, "I will," "I desire," have sometimes been held to create a trust, but these alone, are not sufficient. To constitute a valid Trust, these circumstances must concur : 1. Sufficient words to raise it. 2. A definite subject to be conveyed; and, 3. A certain or ascertained object. Per Sir Wm. Grant, M. R., in the case of Cruwys vs. Colman, 9 Vesey, Jr., 323. Meredith vs. Hencage, 2 Cond. Eng. Ch., 282. Lewin, on Trusts, 76.

1. Sufficient words to raise the trust.

The words may be imperative, yet are not necessarily so. The *subject matter*, the *situation of the parties*, what was the *probable intention*, must be considered. Per Lord Loughborough, in the case of Meggison vs. Moore, 2 Vesey, Jr., 633. Malim vs. Keighly, 2 Vesey, Jr., 531.

Where there is a gift of the absolute ownership, a devise over in whatever terms conceived, is void. Malim vs. Keighly, 2 Vesey, Jr., 531.

In Brunson vs. Hunter, Chancellor Johnson says : Although the words, "it is my wish," are frequently held to import a direct devise or bequest, or to create a trust, and

would generally so operate where the will contained nothing inconsistent with it, yet the rule is not so imperative as to compel us to do violence to the general intent in giving them that effect. And in the decision, the other members of the Court concurred. 2 Hill's Chy. R., 490.

And here again we invoke all the circumstances, the respective situation of the parties, the moral duty of the testator toward Mrs. Lines, an "only and beloved daughter," the life estate devised to her,—and we deny that the terms of the 3d clause of the will can be considered as importing a direct devise or bequest to, or as creating a trust in favor of the children of Mrs. Lines, as to the life estate devised to her; or that it was so intended.

The whole taken together, shows the intention of the testator to have been, to confer upon his daughter, Mrs. Lines, a life interest in the residuum of his estate, giving the remainder in fee to her children, combined with the expression of a desire, that in the exercise of a parental discretion, she might, on the happening of certain events, accelerate the enjoyment of the use of such portions of the property by the children respectively, as she might think fit, right, and proper, to lend to them. It never could have been the intention of the testator to pass over his "only and beloved daughter," and make her children and the husbands of her daughters, the primary and principal objects of his bounty ; giving to his "beloved" daughter but a fleeting interest, a *prædia volantia*, to subsist and continue, and the estate to be preserved until her sons should attain their majorities, and her daughters marry; then to turn over the property subject to an account for rents, issues, and profits, leaving her from thenceforth, to be a dependent upon her children, and the husbands of her daughters, for the common necessaries of life. It seems to be a libel

60 SUPREME COURT,

on human nature to assert it, and yet such is the claim set up in a Court of conscience, by a child against her parent!

But complainant's counsel say they do not ask all—they but seek that the estate shall be divided between the mother and her children, each taking an equal part, with an account from the mother's part of the rents, issues and profits from the marriage of the daughters respectively. And what will probably be left for the mother's portion after the account? In the argument, however, was the first indication of the amount of the share claimed; the bill is as indefinite as the will. But where is the authority for this partition? How are these proportions arrived at? From the opinions of the equity of the case formed by the complainants, or their counsel? Of one thing we are very certain—it is not found in the will of Jonathan Robinson. No rule of division can be predicated upon anything therein contained. If the position be true that she takes but a trust estate under the will of her father, then Mrs. Lines is not entitled to anything; for she is only to hold the legal title for the use and benefit of her children.

On the contrary, we contend that the testator, in the performance of a *moral* duty, as well as the gratification of his pleasure, to provide for his only child, intended to do so for the full period of her life; and the object of so framing the precatory or recommendatory clause, was to keep her children and the husbands of her daughters always dutiful during her life, by making the portion indefinite, and terming it a *loan*, to indicate that, if she complied with the wish, the *title*, which was vested in her for her life, should not be divested, but that she should always be in a position to exercise supervision and control over it. See Ld. Ch. Hardwicke's judgment in the case of Marlborough vs. Godolphin, 2 Vesey, Sen., 73.

The argument for the complainants is, that the testator

intended to make the *children independent* of their mother; on the contrary, we think the reverse was the intention of the testator, and that our opinion is the only one fairly and rationally to be deduced from the peculiar provision. It seems as if it was to insure the continuance of a proper respect, that they were made dependent upon the mother's discretion.

2. But such construction of precatory or recommendatory words, (i. e. the creation of a trust,) will not prevail, where either the objects intended to be benefited are imperfectly described, or *the amount of property* to which the trust should attach is *not sufficiently defined ;* for the difficulty that would attend the execution of such imperfect trusts, is converted by the Court into an argument that no trust was really intended. Lewin on Trusts, 78. 1 Jarman on Wills, 338. Uncertainty of amount, Lechmere vs. Lavie, 7 Eng. Chy. R., 331. Sale vs. Moore, 2 Eng. Chy. R., 270. Tibbitts vs. Tibbitts, 19 Vesey, 664. Abraham vs. Allman, 1 Russell, 515. Wright vs. Atkins, 11 Eng. Chy. R., 83. Gilbert vs. Chapin, 19 Conn. R., 342–5.

The indefinite nature and quantum of the subject, and the indefinite nature of the objects, *are always used by the Court* as evidence that the mind of the testator was not to create a trust. Per Lord Eldon. Morice vs. Bp. of Durham, 10 Vesey R., 536. Pope vs. Pope, 10 Simons R., 1.

A wife, having a discretion given her, was held to take an absolute estate for life, without any binding trust in favor of the children. Thorp. vs. Owen, 2 Hare R., 607, cited in 2 Crabb on real property, Sec. 1773.

None of the cases where precatory words were held to be a trust, are like the case before the Court; they are all with respect to some estate to be enjoyed after the death of the person to whom the power is confided. There is not

one where a child, who is the heir at law, has been held a trustee for remoter kindred as to the estate devised. None where grand-children who are to take in remainder have been allowed to take a lion's share out of the life estate devised to the heir at law.

The *quantum* of property to be loaned is indefinite; the provision is, "shall receive a portion." Nothing can be more indefinite and uncertain, and it seems to illustrate most forcibly the principle of equity stated by Lord Eldon. It is evidence of the intention of the testator that he did not intend to create a trust, but confided entirely to the discretion of his daughter.

As to cases of uncertainty and indefiniteness in the subject matter of a disposition by devise or bequest, see collection of them in 1 Jarman on Wills, 315, *et seq.* See also Lechmere vs. Lavie, 7 Eng. Chy. R., 331. Stubbs vs. Sargon, 2 Keen's R., 255–274. Ommauney vs. Butcher, 11 Eng. Chy. R., 144. Fowler vs. Garlike, 4 Eng. Chy. R., 403.

In Henry vs. Hancock, there was a devise to a female, and if she married a man with less fortune than the property devised, then over to another so far as the defficiency existed. It was held that the devise over was void for uncertainty. 2 Dow's Parlm. Cases, 145—191.

In Peck vs. Halsey, a bequest of "some of my best linen" was held void for uncertainty. 3 P. Wms. R., 387.

In Bull vs. Kingston, a bequest of personal property to a trustee for the use of a married woman, with power to dispose of the same by will, and if no disposition, then as to what should be left over to others; held void for uncertainty. 1 Merivale R. 314.

In Wynne vs. Hawkins, a bequest to the wife of all testator's property, *not doubting* but that she will *dispose of what should be left at her death to two grand-children,*

held *uncertain* what property was to be given, and there-fore no trust raised. 1 Brown Ch. C., 179.

In Jubber vs. Jubber, a bequest of " a handsome gratu-ity" to the executor held void for uncertainty. 9 Simons R., 509. 9 Humphries, 302.

Those cases which were cited by the Counsel for com-plainant in the argument below, of seemingly very uncer-tain amounts, or values of property which had been sup-ported as trusts, are clearly distinguishable from the case at bar. Here there is not only uncertainty in the descrip-tion of " *a portion*," but there is nothing in the will by which it may be rendered certain. There is no rule given to govern the loan, nor is there any state of facts by which the portion is to be or can be measured, and therefore the Court cannot " look with the eyes of trustees," and substi-tute its judgment for that of the individual.

For instance, in the case of Hewitt vs. Hewitt, cited in Lewin on Trusts, from 2 Eden's R., 332, was upon the sub-ject of a fall of Timber by tenant for life, subject to the ap-proval of certain trustees; there the Court substituted its officer in the place of the trustees, because this matter of cutting timber is, in England, reduced to a certain rule, being held to extend only to timber which was *mature*, and therefore fit to cut. The interposition of the trustees was to prevent waste by the tenant cutting such as were unfit.

In Maberly vs. Turton, cited from 14 Vesey, 499, the *maintenance* of the children was the question; a fact which could be ascertained, and therefore was referred to the master, to report upon the propriety of the application.

The principal authority on the subject, is said to be Go-wer vs. Mainwaring, and is cited in Lewin on Trusts, p. 578, and in which Ld. Hardwicke lays down the rule in these terms :—" Where trustees have power to distribute

" *generally*, according to their discretion, *without any* " *object pointed out, or rule laid down*, the Court inter- " poses *not*, unless in case of a charity, which is differ- " ent," &c. In that case, there was a rule given to the trustees ; they were to distribute among the settler's rela- tions " *where they should see most necessity*," &c.

The case of Knight vs. Yarborough, cited from 1 Gil- mer's Va. Reports, 27, was a question of *illusory appoint- ment*, by will, by tenant for life disposing of the fee in the property, under a power, and is wholly inapplicable to the case at bar. So also. Hudson vs. Hudson, cited from 6 Munf., 352, 356. A widow holding a life estate, with pow- er of appointment after its determination of the fee among the testator's children, it was held that she could not ex- clude one of them. Neither is at all applicable to the question involved herein.

The only analogous case which we have been able to bring to the notice of the Court, is that of Burdett vs. Young. There the testator gave the residuum of his estate to his wife for her life. By a subsequent clause, he gave £1,000 each to two grand-children, on their attaining the age of twenty-one years, or marrying. The grand-children having married, brought their bill to obtain the legacies. Baron Price, who heard the cause, decreed that the lega- cies were payable only on the death of the tenant for life ; this decree was reversed by the Lord Chancellor on ap- peal, but his decree was reversed in the House of Lords, and the decree of Baron Price affirmed. See 3 Brown's Parliament Cases, 45.

*W. G. M. Davis* for appellees.

1. The language of the third clause of the will is imper- ative, and is addressed to the executor and executrix as. such.

The will of Robinson, the testator, should be construed as the will of the parent, he having put himself in *loco parentis* to the children. Story Eq., Vol. 2, Sec. 1111 and 1114.

The words used are such as have always been held to create a trust, unless controlled by the general intent. Harding vs. Glynn, 1 Atkins, 469; Ecles *et ux.* vs. England *et ux.*, 2 Vernon, 466; 5 Iredell (1844) p. 422, 454; 3 Merivale, 437.

Technical words, or others which have received a legal definition, will be taken in the legal sense, unless, from the contents of the will, it plainly appear that the testator intended them in a different sense. Lovelass on Wills, 276.

The Court will abide by the *prima facie* intention, the settled meaning of the words, unless driven out by strong, solid and rational interpretation, and plain inference drawn from the rest of the will. Dean vs. Test, 9, Vesey, Jr., 152, 154; Jones vs. Colbeck, 8 Vesey Jr., 42.

The language is addressed to the executor and executrix as an express direction, and not to the legatee or devisee, Sarah A. Lines, and is not within the authorities cited as to bequests. 9 Pick., 395, 401; 10 Smede & Mar., 466; 1 Richardson S. C. Eq. R., 324: Lott vs. Meacham, Flor. R. '51, p. 144; 6 Mass., 37; 2 Story Eq., 976.

2. A totally different rule exists in cases where the testator addresses a direction as to his estate to an Executor, from that which prevails in cases of recommendations, requests, &c., addressed to a person to whom a previous absolute estate has been given. Pierson vs. Garnett, 2 Brown C. C., 226; Cloudesly vs. Pelham, 1 Vernon, 411; Nolligan vs. Nolligan, 1 Brown C. Cases, 491; Remarks of Sir William Grant in case 8 Vesey, 22; Ericcson vs. Willard, 1 N. Hamp., 217; Burrough vs. Philcox, cited at page 345,

9

Part 2, Vol. 2, Tudor's Leading Cases; Foley vs. Parry, 2 Mylne & Keene, 299.

In case of a bequest addressed in terms to an executor, nothing short of an impossibility of ascertaining the intention of a testator, will induce a Court to declare a bequest void. Pierson vs. Garnett, 2 Brown Ch. C., 38; Liley vs. Key, 23 Eng Ch., 581; 3 Harrison, 41; 5 Vesey Jr., 504; Gower vs. Mainwaring, 2 Vesey, 87; Jarman on Wills, 318, 319; Broad vs. Beavan, 1 Russell, 511; 10 Gill & Johnson, 159; Raikes vs. Ward, 23 Eng. Ch., 445; Thorpe vs. Owen, 24 Eng. Ch., 608; 6 Peters R., 68.

3. But where the relations subsisting between the parties are such as existed here, the Courts assume the execution of the trust, notwithstanding the indefinite character of the language, because of the presumed intention that the object of the testator was to provide a benefit. See the opinion in Raikes vs. Ward and Thorpe vs. Owen, 23 E. Ch. R., 447; 5 Iredell, 452.

4. The undivided " portion" in the will, interpreted by the context and situation of the parties, evidently was meant for the share given to each grand-child, and the direction was that such grand-child should have the use of the share, in marriage or majority, but not as absolute property, and therefore it is loaned.

Words may be inserted or changed to affect the intention, especially when the word in the will is in common use to express the same thing. Jarman on Wills, 441; 6 Peters' Rep., 68.

Insert the word "his" or "her share," in place of the word " portion," and the intent would be plain that the testator meant what I have just declared.

But as the intention of the testator was to give an advancement to the grand-children, on their coming of age or marriage, and is so admitted in the answer, then a rule

is furnished by which the extent of the bounty intended can be measured.

5. The ratio of distribution adopted was correct. The Court adopted the statute of distributions as a good rule to go by, to prevent the bequest being void for uncertainty. 8 Vesey, 570.

*M. A. Long* on the same side.

*John E. Ward*, for appellant, concluded.

SEMMES, *Justice*, delivered the opinion of the Court.

The question presented in the argument on the demurrer, and on that part of the decree granting relief to two of the defendants, Goldwire and Poindexter, it is unnecessary to consider, inasmuch as they will be disposed of by one decision on the merits of the case.

The whole controversy arises out of a construction of the will of Jonathan Robinson, deceased; and in the consideration of this question, it is scarcely possible to travel through the numerous authorities commented on by counsel, and which have been pressed upon this Court with great ability.

We must content ourselves with a reference to a few of the leading cases, in support of the conclusions at which we have arrived, after a careful review of them all. The second clause of the will is in the following words :—" I " give and bequeath to my beloved and only daughter, Sarah " Ann Lines, all my estate, both real and personal, during " her natural life, with the exceptions and restrictions here- " inafter mentioned ; and at her death, I hereby direct the " same to be equally divided among her children, share " and share alike." Then follows a devise of this estate, in the event his daughter's marrying, unto Joseph Austin, " in trust for her own sole, separate and exclusive use."

The third clause, and under which the complainants claim, is as follows :—" Should either of my grand-sons ar" rive at the age of twenty-one years, or any of my grand" daughters marry previous to the time of final distribu" tion, viz : before the death of my daughter, Sarah Ann " Lines, then, in that case, my will and desire is, that such " grand-son so arriving at the age of twenty-one years, or " such grand-daughter so marrying, as aforesaid, shall re" ceive a portion of the estate as a loan, to have the man" agement, and receive the benefit of the same, until the " final distribution shall take place, and then to return the " same to be equally divided with the rest of my estate."

In behalf of the complainant, it is contended that the life estate created by the will in favor of Mrs. Lines, was subject to a trust in favor of the grand-children, to be executed respectively on the daughters marrying or the sons arriving at age ; that the language of the will creating this trust is addressed to the executrix, and is imperative, and that complainant, Darden, in right of his wife, by reason of her marriage, is entitled to one-seventh part of said life estate, to be held by him until the final distribution provided for under the will. On the other hand, it is contended that an absolute life estate was created in Mrs. Lines, without restriction, and that the third clause of the will vested in her a mere power, to be exercised at her discretion.

In the construction of the will before us, we can but reaffirm, without adding to the doctrine, recognized by all legal writers, that the intention of the testator, as expressed in his will, shall prevail over all other considerations, if consistent with the principles of law. The intention is every thing ; and to this first and great rule, in the exposition of wills, all others must bend. With an anxious desire to secure this leading object, the Courts allow no

rule of construction of mere words, to control the intention, but the whole instrument is to be considered, and if possible, effect given to every part of it. The relative situation of the parties, the ties and affections subsisting between them, besides the motive which would naturally influence the mind of the testator, are proper to be considered, in expounding the import of doubtful words. 6 Peters S. C. R., 68.

With these well settled principles to guide us, we have had but little difficulty in arriving at what we conceive to be the true interpretation of this will.

It is too manifest to admit of doubt, that the first and leading object of the testator, was to make ample provision, during life, for his daughter, and who it is reasonable to infer, was his only child.

To accomplish this purpose, and prompted in the discharge of a high moral duty, by the love and confidence which he felt for this his " only and beloved daughter," he bequeathed to her for life, his entire estate, with certain " exceptions and restrictions." And to guard against every contingency which might impair this provision, he secures the property in the event of her marriage, by the intervention of a trustee, for her sole, separate, and exclusive use. This accomplished, he next provides for his grand-children, by securing to them, on the death of their mother, an equal share of the same property.

Such being the manifest design, and controlling motive, of the testator, in the testamentary disposition of his property, the power of this Court is invoked, so to construe the third clause of the will, as to encumber the life estate with a trust, which must defeat the former, and leave the tenant for life with a bare pittance for her maintenance and support. In other words, we are called upon to execute a supposed trust, which, with but a nominal reservation, will

invest the remaindermen with the entire estate, they will be entitled to on the death of the tenant for life. Such could never have been the intention of a father to his child, much less the design of one who clothes his very bequest to her, in language eloquent with feeling and affection. If the intention of the testator was to create a life estate, and by the same instrument, and in the same breath to impair it, as the tenant for life, took the estate *cum onere*, with the restriction, we would feel bound to carry it out and execute the trust, though a libel on humanity. But we think it is very clear, that in the liberal bequests made to his daughter and her children, the testator never contemplated a preference of the latter, to the detriment and prejudice of the former.

It is contended by counsel, that the words " exceptions" and " restrictions," twice repeated in the second clause of the will, afford evidence from which the Court is bound to infer that it was in the contemplation of the testator to impose a limitation or restraint on the life estate ; and that this restriction is the trust, in favor of the children. If there was a trust, the argument of counsel, and his construction of the will as to the latter word, would undoubtedly be true. There is, however, some reason for believing that both words, certainly the former, have reference to the special bequests, and the direction of the testator, contained in the subsequent clauses of the will. For, in the first item, all the estate, both real and personal, with the exceptions and restrictions thereinafter mentioned, is given to his daughter, and then follows these words, " at her death, I hereby direct the *same*," that is, all the estate, with the same exceptions and restrictions, to be equally divided, &c., evidently showing that at the final distribution, the whole estate was still subject to the same exceptions and restrictions as the life interest of Mrs. Lines. We

are rather disposed, however, to apply the word "restrictions," to the third clause of the will ; for if the loan therein provided, was a mere power to be exercised or not, at the pleasure of the donee, yet, when exercised, the son or daughter receiving the property, would have the exclusive management, and receive the benefit of it, until the final distribution. And this exclusive use and control, may, without doing any violence in the construction of words, be considered as a restriction on the estate for life. Be all this as it may, it is sufficient, that if there are to be found no other restrictions in fact, upon the life estate, it is not for the Court to conjecture a trust, in order to make the application.

We come now to consider the question, whether a trust is in fact created by the will ? The words " will and desire," when addressed to an executor, are as contended, imperative, and it is his duty to carry out the wishes of his testator, if possible, and when consistent with the will. The words are not necessarily addressed to the executor. The object to be performed will usually afford a safe guide, in determining to whom they are addressed. And when a trust is raised, either by a declaration of the testator, or by intendment or implication of law, and no trustee is appointed, equity will follow the legal estate, and decree the person in whom it is vested, to execute the trust. 2 Story Eq., § 976.

In this case, the legal title is not in Mrs. Lines, as executrix ; for, after the payment of the debts, and the special bequests, her duties as the representative of the testator, had been accomplished, and the legal estate vested in her as the tenant for life. The possession of the property, and the legal title being in her, as legatee, the words of the will are addressed to her as such. Still, if a trust is raised, she

is bound to execute it; if but a power, she can exercise it
at her pleasure.

If there be a trust, she is bound to give to each child an
equal share of the estate, for equality would be equity.
There is no rule by which she would be entitled, in her
own right, to any part of it. The rule to be adopted, must
be inflexible in its application, and it is manifest, if she
be allowed anything, it would be as a gratuity, not as a
right. The very construction of the will, which would al-
low her anything, would allow her all; and the converse
of the rule would be equally true. If we say a trust is cre-
ated by the will, we are bound to say it is without restric-
tion in favor of the children. There is no possibility of
escaping this conviction, for she holds the life estate for
her own use, or for the exclusive use of these children.

To constitute a valid trust, three circumstances must
concur: Sufficient words to raise it; a definite subject; and
a certain and ascertained object. 9 Vesey, 323. No com-
mendatory terms of a will expressing a "wish," "will,"
"desire," &c., are sufficient to create a trust, unless there
be certainty, as to the parties who are to take, and what
they are to take. Gilbert vs. Chapin, 19 Conn., 342; 1
Russ. R., 509; 1 Simons, 542; 9 do., 320.

In the case of Gilbert vs. Chapin, the Court adopts the
doctrine assumed in 9 Simon's, that the proportion which
each child was to take, must first be ascertained. And
this would seem to follow from the principle, that a trustee
has no right, upon his own discretion, to make a distribu-
tion.

In Morice vs. the Bishop of Durham, 10 Vesey Ch. R.,
520, one of the leading cases, the Lord Chancellor says, if
neither the objects nor the subject are certain, then the
words of request do not create a trust, and the property
being uncertain and indefinite, it may be conceded the

testator meant to leave it entirely to the will and pleasure of the legatee, whether he would take upon himself that which is technically called a trust.   Whenever the subject to be administered as trust property, and the objects for whose benefit it is to be administered, are to be found in a will, not expressly creating a trust, the indefinite nature and quantum of the subject, as well as the indefinite nature of the objects, are always used by the Court as evidence that the mind of the testator was not to create a trust.   And the difficulty that would be imposed upon the Court to say what should be so applied, or to what objects, has been the foundation of the argument that no trust was intended.

It is upon the same well recognized principle—that where the intended subject matter of disposition consists of an indefinite part or quantity, the bequest fails for uncertainty—that gifts of a  "handsome gratuity,"  "some of my best linen," "a part of my land," and numerous other gifts of similar import, have been held void.   9 Hump. R., 302; 1 Term., 130; 2 P. W., 874; Jarm. on Wills, 317.   The words " will and desire," are not necessarily mandatory, nor does the question turn upon their grammatical construction.   They would be sufficient to raise a trust, if they were not coupled with words inconsistent with such construction.   Their import and signification depends not so much as to whom they are addressed, as the intention of the party using them, the act to be performed, and the certainty of the subject matter.

If in this case, (the object and the fund being certain,) the portion each grand-child was to take was clearly defined, the Court could act on the desire expressed, and then it would be that the words would become imperative on the person to whom they were addressed, or the Court whose duty it is to expound the will.   But can we supply

by conjecture what the testator has failed to indicate in his will? It is true, that mere words of recommendation have been held by the English Courts to create a trust in the immediate legatee, and, by some of the earlier decisions, such terms were construed to raise a trust where the persons who were to take and the property devised were doubtful. See 1 Vesey R., 336 ; 19 do., 29. In these cases, the Court lost sight of the rule of construing the will by the instrument itself, and adopted a principle as uncertain in its application as the subject they were dealing with. The effect of these decisions was to substitute the Court in the place of the testator ; to raise a trust where none was contemplated, and to dispose of the estate without giving effect to the will.

Judge Story says the doctrine of thus construing expressions of recommendation, " wish" and " desire," into positive and peremptory commands, is not a little difficult to be maintained, upon sound principles of interpretation of the actual intention of the testator. It can scarcely be presumed that he should not clearly understand the difference between such expressions and words of positive command, and that, in using the one and omitting the other, he should not have had a determinate end in view. 2 Story's Eq. Juris., § 1069.

The first case, it is said, that construed words of recommendation, &c., into a command, made a will for the testator. The current of decisions of late years, has been against converting the legatee into a trustee ; and the English Courts have manifested a strong disposition to retrace their steps, and restrict the doctrine of recommendatory trusts, by giving to the words of a will their ordinary sense, unless it is clear they were designed to be used as peremptory, (Jarm. on Wills, 338,) in which case, though precatory in form, they become imperative in fact.

There can be no doubt but that words of recommendation will create a trust, provided all the requisites are to be found in the will concurring for that purpose. They are held in many cases to import an imperative devise, and will so operate, if there is nothing in the will inconsistent with such a construction. The true question, in every case, is, whether the intention of the testator is manifest and mandatory in favor of the object of the bounty, or is merely suggestive and advisatory to the first taker? If the testator in this case designed to determine the specific amount which his daughter should loan to her children, why should he not have said so in his will? Why leave a matter of such importance to speculation and inference, and that, too, of the most doubtful character?

By the terms of the will, a *portion* of the estate is to be loaned the children, but it cannot be ascertained in the will what that interest is. We have no means of defining the extent, and we know of no rule by which it can be estimated. It is insisted that the statute of distributions should be adopted as a *rule*, by which the specific interest of each grand-child can be ascertained; and this, we understand, is the basis on which the decree of the Court below rests, and by which one-seventh of the estate was allotted to each child. If this rule which is invoked be adopted to ascertain the *portion* a *child* would take, then *dehors* the will, Mrs. Lines would be entitled to the whole estate. If we force the application of the rule to the portion the grand-children are to take, then its effect is to disinherit the daughter, the heir at law.

But we believe no case can be found where the statute of distributions has been adopted as a *rule* to determine the extent of a legatee's interest. In cases which have arisen in the English Courts, where bequests have been made to the *testator's family*, or relations, the statute has

been adopted to determine the object of the bounty, never the extent of the subject matter.

The cases relied on by complainant's counsel, do not support his argument. In the case of Pierson vs. Garnett, 2 Brown C. R., 38, and which created great interest at the time, the difficulty was *who* were the descendants, and how they were to take, in case of no disposition. Lord Kenyon was of opinion it was a power to distribute in such manner as the party thought fit; likewise, a power to give, which the Court could not control; but if he *did not give at all*, the Court would give for him, to *such* descendants as should be entitled. In the case of Brown vs. Higgs, 8 Vesey, 573, the question was, who were the relations of the testator? The Court refers with approbation to the cases of Pierson vs. Garnett and Harding vs. Glyn, 1 Atk., 479; and, in adopting the statute of distributions, says it is a safe rule to go by; and, as equality is a principle of equity, the estate shall go to such of the testator's next of kin as were alive at the death of his wife, who held the trust estate.

The cases referred to in 1 Russ. R., 59, 23 Eng. Ch. R., 445, 34 Eng. Ch., 608, 617, are not in conflict with the doctrines we have adopted. They were cases of maintenance, and the Court has ever held that a direction in a will to provide maintenance, support or education for children, created a trust for the objects; and the fund out of which the provision was to come being defined, the extent of the bounty could be easily ascertained, by reference. *Certum est quod certum reddi potest.* If a reference was made in the case, the Master could adopt no rule in aid of his judgment, unless an arbitrary one, and there would be no guide to his discretion.

There is a numerous class of cases where no trust existed, and where there could be no distinction between the

force of peremptory and precatory words, but where the contemplated testamentary benefit was *direct*, the object certain, and the intention of the testator to give manifest from the will; and yet the bequest failed, for want of certainty in the subject matter. One case will serve to illustrate the principle. In Jones and others vs. Hancock, 4 Dow's Parlm. R., 145, an estate was given to a daughter, on conditions, with a devise over. The specific portion or share so given over not appearing on the face of the will, and there being no means of ascertaining it, the House of Lords, concurring in the unanimous opinion of the Judges, held the devise over void for uncertainty. In that case, the intervention of a trustee would have been unavailing, for, however mandatory the words, the interest was too indefinite for the operation of a trust.

The authority relied on by one of the counsel for complainant, in the case of Malim vs. Keighly, 2 Vesey Jr., 334, is clearly misapprehended. The Master of the Rolls says, that to create a trust, the will should point out the object, the property, and the way it should go. Applying this authority to the case before us, it is insisted that the property is clearly pointed out in the will of Robinson. But it is not the property or fund out of which the portion is to be carved, but the extent of the portion itself, to which the Court refers; otherwise, it would be at variance with every other authority on the subject.

The fact of leaving the interest indefinite, is strong evidence from which it may reasonably be inferred that the testator designed to leave the extent of the loan, if not the loan itself, to the discretion of his daughter, limiting the exercise of it to the contingencies provided for in the will. The words themselves, independent of the context, imply a mere power, as contradistinguished from a declaration of trust. This construction derives additional weight when

the situation of the parties, and the relationship, is consid-ered.   She was the mother of these children, and whatev-er solicitude he may have felt for their welefare, during her life, he could not have entrusted his power in safer hands, or had a more sure guarantee for her good faith and fidel-ity.   To her maternal care was confided the education and maintenance of these children ; and it is not to be presumed that their change of position in after life, would sever the ties which subsisted between them.   Upon her affection for her own children, the testator could safely rely, and in her judgment and discretion he was willing to confide.

We do not feel the force of the argument in reference to the trust estate being in Joseph Austin.   It is true, that upon the marriage of Mrs. Lines, the legal title, by the will, passed to him, but in trust for the use of the *cestui que trust*, and for the purpose of protecting her life interest from the debts of her husband.   It is equally true that, upon her divorce from her husband, the temporary pur-pose of the trust having been accomplished, the estate re-verted back to her.   1 Kelly Geo. R., 390.   But indepen-dent of the divorce, (and that of itself should not affect the merit of the argument,) the trust created in Austin was a limited one, and for a special object, restricted to the *ex-clusive* use and enjoyment of the estate by Mrs. Lines. The trust could not affect the construction of the will, or enlarge or modify its terms, by which she became the ten-ant for life, and during the term the absolute owner, and as a consequence, no change could be created on the life estate by the operation of the trust.

This being a power vested in Mrs. Lines, the question now recurs, how far its exercise can be controlled by this Court ?

But little need be said upon this subject ; for if a mere power, and which seems to result from what we have said,

the question gives its own answer, and that answer is con-
clusive.  There is a clear distinction between aiding a
power, and compelling its execution.. The one assists, the
other controls, the discretion of the donee, and in doing
that, overthrows the intention of the party creating the
power.  In the non-execution of a power, a Court of Equity
assumes no jurisdiction, and should never interfere.   But
it will aid a defective execution, unless it be inequitable
to other persons.  Before the aid of a Court can be exten-
ded in any case, the party who seeks relief must show, in
himself, some superior equity to him against whom it is
asked.  If the equities are equal, the Court will not com-
pel the donee to do that which he will not do for himself,
but will remain silent and passive.  And for this reason,
equity will not even aid a defective execution of a power,
to the disinheritance of the heir at law.  1 Story's Eq., §
176–7.  The utmost limit to which a Court can consistently
go in its construction of a mere power, is to execute what
the donee wished to do, but failed to accomplish.  In the
case of Brown vs. Higgs, 8 Vesey R., 574, the Lord Chan-
cellor says, that where there is a mere power of disposing,
and that power is not exercised, a Court cannot interfere.
If it be true, as contended, that the testator, Robinson,
placed himself in *loco parentis* towards his grand-children,
no presumption can be drawn from the fact, to the preju-
dice of his daughter, for there was a higher obligation on
his part, and a paramount equity in her favor.

The case of Withers vs Yeadon, Adm'r, 1 Rich. Eq. R.,
325, is relied on as a recent case, in support of the argu-
ment for complainant.  The opinion of the Court, it is true,
has some strong expressions, in regard to the execution of
powers, and if they were intended to apply to powers in
general, they are subject to many qualifications.  It is to
be presumed, however, that their application was designed

to be restricted to cases similar to the one before the Court; otherwise, there would be no distinction between a mere power of appointment, and a power coupled with a trust. By the will in that case, the testator gave to his son his estate, *upon the special trust*, for the benefit of his family, &c., and that he would devise the same " *to all, or any child*, or children of his*," &c., as he might see fit. The legatee died without making the appointment. It cannot be doubted, that though there was an express trust, yet the power of selection, as to the objects, was left to the discretion of the legatee, and in the exercise of this undoubted discretion, had he left the estate to one child, the devise would have been good, and no Court could have disturbed it. It would have been within the principle recognized in Kemp vs. Kemp, 5 Vesey, 856; Thomas vs. Thomas, 2 Vern., 443; 1 P. Wm., 149; 1 Atk., 389; 5 My. & Cr., 72. The Court, by its decree, distributed the estate equally *among* the children, upon the principle (it is to be supposed) laid down in the above authorities, that when there appears a general intention in favor of a class, and a particular intention, in favor of individuals of a class, to be selected by another person, and the particular intention fails from that selection not being made, the Court will carry into effect the general intention in favor of the class. § 2 White & T. Lead. Cases, 345. Nothing can be extracted from this case which we have been induced to notice, beyond a mere *obiter dictum* of the Chancellor, in favor of complainant.

But it is contended by one of the counsel, that the portion of the estate loaned by Mrs. Lines to complainant, is *illusory*, and that it being an improper execution of the power, the Court will control it.· The leading cases relied on in support of this position, are Kemp vs. Kemp, 5 Vesey, 556, and Gower vs. Mainwaring, 2 Vesey R., 87. If

this estate was given to Mrs. Lines for life, with the power to " devise it to her children as she should think proper," as in the first case, and the question was, as to the exercise of this power, it would present a very different case from the one before us. The devise would be mandatory according to the English Courts, and we might feel bound to consider it a trust, for the benefit of all the children, and a gift to one, of a nominal amount, would be *illusory*. They would be entitled to a substantial, if not an equal share ; first, because there would be no counter equity, to repel such a disposition, but a superior equity in favor of it ; second, the devise should be executed in good faith, with equity and good conscience, and in that case equity would be equality. It is upon this principle, that the execution of powers, when coupled with a trust, as in both the cases referred to, as well as Knight vs. Yarborough, 1 Gilmer's Va. R., 27, have been held by the Courts to be *illusory*. But in all these cases, the execution of the power was suspended by a life estate. While in the case before us, the power to be exercised is to take effect, if at all, during the existence of the life estate, and to its destruction.

It cannot be denied, but that the English Courts have assumed jurisdiction even over discretionary powers. And in this view, there is nothing in this doctrine of *illusory* appointment, which commends itself to the favorable consideration of this Court, and we feel but little disposition to adopt a rule which is never mentioned, but with distrust, as to its soundness, and regret that it ever was established. Butcher & Gooday vs. Butcher, 9 Vesey R., 381–391. It is a mistake, that the doctrine flows from a trust, or is connected with it. In the case of discretionary powers, there is no principle to guide a Court, in determining when an appointment is illusory, and when it is not. The rule itself is founded upon no principle. It is

an arbitrary one, subject to no restraint or limitation.    It is going very far, to say that the exercise of the power, which a testator has reposed in the honesty, good faith, and discretion of another, shall be controlled by the Court. It is fair to conclude, that the testator had no fixed pur-pose of his own, and to control the judgment of the donee, is to do violence to the intention of the testator, and leave the execution of the power, to the discretion of the Court who tries the case ; and that of itself, is a sufficient answer to the soundness of the doctrine.    See Fronty vs. Fronty, Bai. Eq. R., 517.

The Court cannot shut its eyes to the fact, that in the ex-ercise of this power, Mrs. Lines has loaned property to the complainant and wife, and offered to extend to them ad-ditional aid.    This was declined by the complainant in the first instance, because he did not require it.    When he became embarrassed, and the offer was renewed, he refu-sed all assistance less than his full portion, but which he did not define, claiming as a right, what he was entitled to as a favor.

In every aspect of the case, we are satisfied the decree of the Court below is erroneous, and that the testator in-tended to repose in his daughter a discretionary power, as to any advancement to be made to her children—that they are bound by an exercise of that discretion, and that this Court cannot control it.

*Per curiam.*    Let the decree of the Court below be re-versed, and the bill be dismissed.

Note.—A petition for a rehearing was filed by the appellees in this cause, but because of the incompetency of one of the Judges to sit on the motion, it was continued until the next term.