**LAURIE PEACOCK MAGNANT, et vir., v. ALBERT V. PEACOCK, et al.**

25 So. (2nd) 566          January Term, 1946
April 9, 1946          Division B

*H. H. Taylor* and *Henry H. Taylor, Jr.,* for appellants.

*J. Lewis Hall* and *M. Earl Baum* for Walter C. Peacock, Albert V. Peacock and Jean O. Peacock and *Morrow & Mays* for Arthur S. Peacock, appellees.

THOMAS, J.:

A bill was filed in the chancery court by the present appellant praying for a decree declaring her right to properties of an estate "to the extent of an undivided one-fifth interest thereof." The chancellor granted a motion to dismiss; so there is presented to this court the matter of the sufficiency of the pleading or, to be more specific, the question whether he correctly construed the will and the codicil of one Charles John Peacock.

The appellees are the surviving sons of the testator; appellant is the daughter of a son who predeceased him.

In the second paragraph of his will the testator devised and bequeathed his entire estate to his wife for life, with remainder to his four sons, per stirpes; in the codicil this para-

graph was changed so that instead of the four sons' receiving the remainder per stirpes, one-fourth of the estate should go to each of three of them, while the fourth would immediately receive only one-third of his share, the remaining two-thirds to be held by the executors in trust for this son's daughter until she became twenty-seven years old. The testator stipulated that upon her attaining that age or upon her death meanwhile, the interest so held in trust for her should vest in her father in order that he should eventually "receive the full one fourth share of [the] estate."

In the third paragraph of the testament the testator expressed the wish that the sons surviving him should "form a Board of Arbitration" to accomplish a peaceable distribution of the estate and the "desire" that his "beloved granddaughter [appellant] . . . be provided for in such manner" as to the executors and the members of the so-called board of arbitration should seem meet.

Advertising for the moment to the codicil, it was expressly stated there that all other conditions set forth in the will except those appearing in paragraph two should remain in effect.

So the vital point in controversy is simply this: Where the testator, both in the will and the codicil, disposed of the entire remainder, would a fifth interest in the property inure to a granddaughter, whose father had died at the time the will was executed, where the testator stated only the "desire" that some provision be made for her by her uncles?

In order to avoid confusion it might be said here that the widow of the testator has died; that the county judge revoked letters testamentary theretofore issued to the four sons because of dereliction in the performance of their duties, appointed in their stead John A. Anderson administrator cum testamento annexo de bonis non; that they had never, so the bill charges, met as a board of arbitrators, as directed in the will.

We hold the view that the mention of appellant in the will did not operate to create a precatory trust for her benefit. As long ago as 1853 this Court, in the case of Lines v. Darden, 5 Fla. 51, in dealing with the subject, announced three

prerequisites to the establishment of a valid precatory trust: "Sufficient words to raise it; a definite subject; and a certain and ascertained object." To these Mr. Redfearn in his "Wills and Administration of Estates in Florida" (page 303) has added the requirement that the manner of execution of the trust be expressed. In determining the question whether the words used by the testator were meant by him to establish a trust for the benefit of appellant, of course we must observe the oft-repeated cardinal principle that the intention of the testator is the prime consideration in the construction of a will, but we cannot, simply because Charles John Peacock expressed the wish that after the death of his wife his sons should make an effort to care for the appellant, hold that that statement would in itself make her cestui que trust and them trustees.

There can be no doubt, of course, that the testator purposed that his wife should have his property as long as she lived. It is certain, too, that the remainder was to go to his four sons, a plan which he was at pains to iterate when the codicil was executed. Had it been his design for the niece, appellant, to receive one-fifth, a position she now takes, and each of the sons the same amount, the testator could have readily said so by simply dividing the remainder into fifths instead of fourths.

The second prerequisite is met because the name of the beneficiary is certain; however, there is no clear identity of the trust property. Whether each of the sons should make a contribution from his share, whether certain property should be set aside for her benefit before the sons receive their portions, what amount of money the "provision" contemplated, would be left entirely to conjecture. So indefinite is the subject matter, the trust property, that a precatory trust cannot be said to have been established or, when considered with the other circumstances, to have been intended. See Smullen v. Wharton, 73 Neb. 667, 103 N.W. 288; Floyd v. Smith, 59 Fla. 485, 51 So. 537.

It is plain to us that the language we have quoted referring to the appellant was no more than the declaration of a wish or, to use the testator's own word, a "desire," and

that the chancellor made no mistake when he dismissed the bill.

Affirmed.

CHAPMAN, C. J., BROWN and SEBRING, JJ., concur.