BENTON, Judge.
Wilfred P. Diana and Ronald S. Diana, as personal representatives of the estate of *1375 their mother, Catherine M. Diana, appeal an order directing sale of the estate’s interest in a closely held corporation, Diana Estates, Inc. In the alternative, the order requires sale of the corporation’s principal asset, real estate situated in Hunterdon County, New Jersey, and dissolution of the corporation. Appellants’ sister, Elissa D. Bentsen, herself formerly a personal representative, argued successfully below that the will requires one sale or the other. We reverse the order directing sale of property, because we conclude that the will leaves the decision whether to sell the stock — any or all — to the personal representatives. Whether corporate assets are to be sold is for the corporation to determine.
We have jurisdiction to review the order directing sale of property even though disposition of the Diana Estates, Inc. stock is only one of many questions those administering the estate must resolve before probate proceedings can be concluded, see Sutton v. Stear, 264 So.2d 838 (Fla.1972); Smoak v. Graham, 167 So.2d 559 (Fla.1964), and despite the existence of other disputes between the parties. See Bell v. Harris, 366 So.2d 765, 766 (Fla. 1st DCA 1979). Under Florida Probate Rule 5.100, the order directing sale of property is final within the meaning of Florida Rule of Appellate Procedure 9.030(b)(1)(A). See Estate of Baker, 327 So.2d 205 (Fla.1976); Sun Bank and Trust Co. v. Jones, 645 So.2d 1008 (Fla. 5th DCA 1994), review denied, 658 So.2d 991 (Fla.1995); Howard v. Baumer, 519 So.2d 679, 681 (Fla. 1st DCA), review denied, 528 So.2d 1181 (Fla.1988).

Will Provisions

Catherine M. Diana’s will made certain specific monetary devises. The rest of her estate passes either under a residuary clause or under article tenth, which provides:
I give and devise any and all stock or securities in DIANA ESTATES, INC., which I may own at the time of my death, or, in the event the stock or the underlying assets of said DIANA ESTATES have been sold, such of the proceeds therefrom which I may own at the time of my death ... as follows:
A. Thirty-two per cent (32%) thereof to my son, WILFRED P. DIANA....
B. Thirty-four per cent (34%) thereof to my son, RONALD S. DIANA-
C. Thirty-four per cent (34%) thereof to my daughter, ELISSA BENTSEN....
The parties dispute whether Mrs. Diana gave some of her stock in Diana Estates, Inc., to her children during her lifetime, but that question is not now before us.
Under the residuary clause in article eleventh, Elissa D. Bentsen takes thirty per cent, as opposed to the thirty-four per cent she receives under article tenth. Neither of her brothers takes anything under article eleventh. Article thirteenth allocates taxes and expenses of administration “ratably out of the assets of which disposition is made in paragraphs ‘TENTH’ and ‘ELEVENTH’.” But nothing in the will precludes the possibility that taxes and expenses will be paid exclusively out of income: Article fifteenth directs that no post-mortem income “shall be added to or ever become part of the principal of [the] estate.” Article sixteenth confers broad powers on the personal representatives, including the power to borrow money, the power to make distributions in cash or in kind, the power to pay all “charges from income or principal,” and the power “[t]o retain any ... property.”
Article seventeenth, which has been characterized as a “liquidity clause,” provides:
In recognition of the fact that my estate may consist primarily of real property or of stock in a closely held corporation, the principal asset of which is real property, I specifically direct that my executors shall not be required to make payment of any specific devise hereunder, nor shall any interest be due on such specific devises until such time as sufficient liquidity can be obtained by the sale of all or part of such real property or stock, as the case may be, on such terms and conditions and at such reasonable time as my executors, in their sole discretion, may deem appropriate. I further authorize my executors to make such extensions in the payment of all death or estate taxes as may be owing *1376 as a result of my death for such period as same may be required to obtain sufficient liquidity in my estate. I request that my executors liquidate any and all real estate holdings or interests in Subchapter S corporations as promptly as may be possible after my death consistent -with obtaining fair and reasonable consideration for the same.
The question is whether the will requires the sale of any and all stock the estate holds in Diana Estates, Inc.
While the parties have stipulated that the estate owns some stock in Diana Estates, Inc., they disagree about how much. The trial court’s order that Diana Estates, Inc. sell real estate it owns in the event the estate is unable to sell its stock in the corporation poses separate questions, of the kind adverted to in In re Estate of Gettinger, 157 So.2d 692, 695 (Fla. 3d DCA 1963) cert. dismissed, 165 So.2d 757 (Fla.1964):
[T]o include in a decedent’s estate the assets of a corporation substantially owned by him would produce far reaching results. It would ignore the rights and interests of all other stockholders in the corporation. The creditors of the corporation might have to file claims against the estate of the principal stockholder. The board of directors and officers might be divested of all authority and their power taken over by the executor. The real and personal property of the corporation might have to be distributed among numerous beneficiaries ....
“[T]he affairs of a corporation, even though substantially owned by a decedent, cannot be administered by decedent’s executor as assets of the decedent’s estate.” Gettinger v. Gettinger, 165 So.2d 757, 757 (Fla.1964). Accord Swartz v. Russell, 481 So.2d 64, 66 n. 1 (Fla. 3d DCA 1985); Perez v. Lopez, 454 So.2d 777 (Fla. 3d DCA 1984). It is not clear here that the estate even controls the corporation.

Testamentary Intention

The purpose of construing a will is to give effect to the decedent’s intention as expressed in the will. “The intention of the testator as expressed in his will controls the legal effect of his dispositions.” § 732.6005(1), Fla. Stat. (1995). In re Estate of Tolin, 622 So.2d 988 (Fla.1993); Elliott v. Krause, 531 So.2d 74 (Fla.1988); Marshall v. Hewett, 156 Fla. 645, 24 So.2d 1 (1945); Sorrels v. McNally, 89 Fla. 457, 105 So. 106 (1925); In re Estate of McGahee, 550 So.2d 83 (Fla. 1st DCA 1989), review denied, 560 So.2d 232 (Fla.1990); Pancoast v. Pancoast, 97 So.2d 875 (Fla. 2d DCA 1957). “The intention is every thing; and to this first and great rule, in the exposition of wills, all others must bend.” Lines v. Darden, 5 Fla. 51, 68 (1853).
The intention expressed in article seventeenth is to provide against the possibility that the estate will be strapped for cash. The first sentence authorizes postponing payment of monetary bequests in such an event. It contemplates a “sale of all or part of ... real property or stock ... on such terms and conditions and at such reasonable time as ... [the personal representatives], in their sole discretion, may deem appropriate,” in order to obtain “sufficient liquidity.” Similarly, the second sentence authorizes the personal representatives to “make ... extensions in the payment of all death or estate taxes,” if money to pay taxes is not available when taxes fall due. The phrase “sufficient liquidity” recurs. The final sentence in article seventeenth must be read in conjunction with the sentences that precede it.
Mrs. Bentsen makes much of the fact that article thirteenth allocates taxes and administrative expenses “ratably out of’ the bequests of Diana Estates, Inc. stock and assets passing under the residuary clause. Her professed fear is that the stock bequests may not bear their fair share of taxes and expenses, unfairly burdening the residuary legatees. (Any such misallocation would work to her personal benefit.) We do not believe that this theoretical possibility makes article thirteenth incompatible with discretion in the personal representatives to decide whether to sell some or all of the Diana Estates, Inc. stock.
At bottom, appellee’s argument regarding article thirteenth is a variation on the theme that the estate may have liquidity problems, as indeed it may. On the other hand, the estate’s income (including any dividends from *1377 Diana Estates, Inc.) may prove sufficient to pay taxes and expenses, as authorized by articles fifteenth and sixteenth. If liquidity problems do arise, the personal representatives may be forced, as a practical matter, to sell some of the estate’s assets, despite their authority to borrow money. Whether the will itself requires them to sell all of the Diana Estates, Inc. stock is, however, a separate question.

Will as a Whole

In construing a will, the whole instrument must be considered, and a review of the entire testamentary scheme must be undertaken. Cartinhour v. Houser, 66 So.2d 686 (Fla.1953); Dutcher v. Estate of Dutcher, 437 So.2d 788 (Fla. 2d DCA 1983). “The will as a whole should be considered and the testator’s general plan or scheme ascertained.” In re Estate of Lesher, 365 So.2d 815, 818 (Fla. 1st DCA 1979). “[T]he intent of the testator as it may be revealed by what he has written ... [is] to be measured by the language he selected and used, not in isolated words, clauses or paragraphs, but in the entire instrument from the first letter to the last period.” Luxmoore v. Wallace, 145 Fla. 325, 199 So. 492, 495 (1940).
It is in this context that the rule “that when there is an irreconcilable conflict between two clauses of a will pertaining to the same subject matter, the latter clause will prevail as being an expression of the testator’s intention,” In re Estate of Smith, 75 So.2d 686, 688 (Fla.1954), should be understood.
And, as more fully stated in Thomas’ Florida Estate Practice Guide, pp. 16-38, § 31:
“As previously pointed out, where there are repugnant or contradictory provisions in a will that cannot be reconciled, the later provision will control. This rule applies only in case of necessity and only when the later clause cannot be reconciled with the earlier one. It is well established that a later clause in a will must be deemed to affirm and not to contradict an earlier clause, if such construction can fairly be given. When an interest is clearly and expressly conveyed by one clause of a will, the devise or bequest will not be considered taken away or diminished by subsequent words unless they are equally clear and decisive of the testator’s intention. The theory for this holding is to the effect that where a testator positively makes a devise or bequest, there can be no intent in his mind to take it away or cut it down. An absolute gift of a property interest cannot be cut down by subsequent provisions unless words are used which are as clear and decisive as the words making the conveyance.”
Estate of Rogers, 180 So.2d 167, 170-71 (Fla. 2d DCA 1965). “When faced with provisions of a will seemingly in conflict, it is the responsibility of the court to harmonize the conflicts in order to give full measure to the testamentary intent if harmony is possible and within the bounds of reason. In re McMillan’s Estate, 158 Fla. 898, 30 So.2d 534 [FIa.1947].” Meszaros v. Holsberry, 84 So.2d 565, 567 (Fla.1956). We conclude harmony is possible here and within the bounds of reason.
Article seventeenth, nestled as it is among a cluster of administrative provisions, is an unlikely venue for revising the scheme of distribution established in articles second through eleventh. The trial court’s construction of article seventeenth so as to require the estate to sell all of its stock in Diana Estates, Inc. renders nugatory the language in article tenth bequeathing the stock. The trial court’s construction of article seventeenth also brings it into conflict with article sixteenth’s express grant of power to retain property the estate holds.
The evident purpose of article seventeenth is simply to assure that the estate — as opposed to any beneficiary — will have the cash it needs to meet its obligations. We reject the trial court’s expansive reading of article seventeenth and its undue emphasis on the final sentence in article seventeenth. Properly understood, the final sentence does little more than exhort (“request”) the personal representatives not to delay unduly, if assets must be sold to meet the estate’s needs.

Precatory Words

We have not overlooked the use of the word “request” in the final sentence of article *1378 seventeenth. Elsewhere in the same article the testatrix used the phrases “I authorize” and “I specifically direct.” In other articles, the testatrix makes not infrequent use of the phrases “I direct” or “I hereby direct.” The contrast between the precatory “request” and the mandatory “direct” is properly taken into account in construing the will. See Dwyer v. Allyn, 596 N.E.2d 903, 906 n. 2 (Ind. 1st DCA 1992). We specifically reject appellee’s contention that no distinction should ever be drawn between precatory words and language imposing an unequivocal obligation, when addressed to a personal representative or other fiduciary. The four Florida cases appellee cites for this proposition, Lines v. Darden, 5 Fla. 51 (1853); In re Estate of Marks, 83 So.2d 853 (Fla.1955); In re Estate of Fresia, 390 So.2d 176 (Fla. 5th DCA 1980); and In re Estate of Rice, 406 So.2d 469 (Fla. 3rd DCA 1981), review denied, 418 So.2d 1280 (Fla.1982), do not establish so broad or rigid a rule. In no more than one of the cited cases, moreover, can it be said that any such rule was actually applied.
In Lines, the question was whether preca-tory language (“wish and desire”) imposed a trust on property in which the testator left a life estate to his daughter, who was also executrix of his estate. The court’s answer was no. The Lines court identified the “true question” as “whether the intention of the testator is manifest and mandatory.” Id. at 75. In Marks, the question was whether a will could require (“direct”) the executrix to retain a particular lawyer. The court’s answer was no. Similarly, in Fresia, language in a will specifying (“wish”) certain real estate agents to sell estate property was held “not binding on the [personal] representative, but rather ... only advisory.” 390 So.2d at 178. Finally, the court in Rice seems to have held that an outright gift to the testator’s brother did not belong in the marital trust, in part because of precatory language (“wish and desire”) in the will specifying distribution to a separate residuary trust.
While it has been said that precatory words “when they come from a testator, who has the power to command, are to be construed as commands, clothed merely in the language of civility,” Erickson v. Willard, 1 N.H. 217, 229 (1818), and a testator’s preca-tory words might in an appropriate case require the sale of property, Thomagel v. Pforr, 144 Cal. 121, 77 P. 825 (1904), the crucial question remains the intent of the testator as made manifest in the will as a whole. Here a mere “request” that unnamed stock be sold (if — it is clear from context— necessary to obtain “sufficient liquidity” for the estate) does not vitiate specific devises of certain stock the testatrix owned at her death. (“I give and devise any and all stock or securities in DIANA ESTATES, INC., which I may own at the time of my death....”)
Reversed and remanded.
JOANOS and VAN NORTWICK, JJ., concur.